UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

SARAH WONDERS,                                              CASE NO.:

    Plaintiff,

v.

UNITED TAX GROUP, LLC,
a Delaware limited liability company,

    Defendant.
_____/

## PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, SARAH WONDERS ("Plaintiff" or "WONDERS"), hereby sues Defendant, UNITED TAX GROUP, LLC ("Defendant" or "UNITED TAX"), a Delaware limited liability company, and alleges:

### INTRODUCTION

1.    This is a sexual harassment action against her former employer, UNITED TAX who subjected her to hostile environment sexual harassment, retaliation, negligent supervision and training, negligent retention and whistleblower violations. Plaintiff sues for damages pursuant to Title VII of the Civil Rights Act of 1964 and the Florida Civil Rights Act of 1992 as amended as well as the Florida Private Whistleblower Protection Act, Fla. Stat. §448.101 et seq. ("WPA")..

### JURISDICTION AND VENUE

2.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §§1331, 1337 and 42 U.S.C. §2000e-5(f).

3.    Plaintiff invokes this Court's supplemental and pendant jurisdiction over all of Plaintiff's state law claims which arise out of the same nucleus of operative facts as the federal

claims alleged herein.

4. Venue is proper in this Court under 28 U.S.C. §1331(b) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

5. At all times material, Defendant employed more than fifteen (15) persons, and therefore was and is an "employer" as that term is defined in Florida Statutes §760.02(7) and Title VII.

6. Plaintiff is an "aggrieved person," as defined by Florida Statutes §760.02(10) and Title VII because she filed a Charge of Discrimination with the Equal Opportunity Commission ("EEOC") and the Florida Human Rights Commission ("FCHR").

## PARTIES AND COMPLIANCE WITH PROCEDURAL REQUIREMENTS

7. At all times material hereto, Plaintiff WONDERS was a citizen and resident of Palm Beach County, Florida, and is a female.

8. At all times material hereto, Defendant, UNITED TAX GROUP LLC was and is a Delaware limited liability company and is authorized to do business in Palm Beach County, Florida.

9. On July 2, 2012, WONDERS timely filed her Charge of Discrimination with the EEOC and the FCHR. A copy of WONDERS' dually filed Charge of Discrimination is attached hereto and marked as **Exhibit "1"**.

10. On February 6, 2013, the EEOC issued WONDERS a Notice of Right to Sue, a copy of which is attached hereto and marked as **Exhibit "2"**. More than 180 days have elapsed since the filing of the Charge and FCHR has not rendered a determination in the case. As such, pursuant to Fla. Stat. § 760.11, PAULINO may file this civil action.

11. Plaintiff has complied with all conditions precedent prior to bringing this action.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

12. In or about October 2011, WONDERS became employed by UNITED TAX, a financial services and tax resolution company, as their Enrollment Assistant.

13. From the onset of WONDERS' employment with UNITED TAX, she was subjected to continual and repeated sexual harassment by her co-workers including, but not limited to, detailed obscene and degrading descriptions of her co-workers' sexual fantasies and experiences; sexual remarks, sexual jokes, sexual questions, vulgar sexual acts and displays of partial nudity in the workplace coupled with verbal and physical gestures.

14. From the moment that it began, WONDERS complained to her managers, Executive Vice President of Sales and Marketing MICHAEL MOURGIDES ("MOURGIDES") and Executive Vice President of Operations ADAM BULYAR ("BULYAR"), and her supervisor, Enrollment Manager STEWART COOPER ("COOPER"), repeatedly about the conduct, but they took no action to stop the sexual harassment which only worsened with time.

15. Despite WONDERS' repeated complaints to management, they not only allowed the sexually harassing conduct to go on, but in fact, they encouraged and often actively participated in these immature and inappropriate displays of sexually harassing behavior.

16. WONDERS tried her best to ignore her sexually harassing environment but found it impossible to ignore, avoid and/or escape the repetitive and unprofessional behavior she endured on a daily basis because WONDERS, COOPER, and eleven (11) Enrollment Specialists all worked together in one room containing two (2) long tables for the Specialists and two (2) connecting desks for WONDERS and COOPER. WONDERS was the only female who worked in the room.

17. WONDERS was subjected to severe and pervasive sexually harassment every

day; and most days, the behavior of her co-workers was so despicable that WONDERS work environment became unbearable.  The actions enumerated below describe some, but in no way all, of that despicable behavior WONDERS endured and that interfered with her work.

18.     On January 30, 2012, an unidentified male co-worker put semen in the bathroom sink, which was done intentionally so that WONDERS would find the semen in the bathroom sink.

19.     On February 9, 2012, a co-worker, JORDAN SCHLAM ("SCHLAM"), entered the office talking about a girl he left in his house. He described in graphic detail how he had won her over with his dance moves and "rocked her all night."  He began simulating sexual intercourse motions in front of WONDERS and offered to take his pants off. His male co-workers eagerly listened and laughed as WONDERS found his behavior extremely offensive.

20.     On February 27, 2012, SCHLAM put his hand on WONDERS shoulder and asked her, "Do naughty girls need love too?"  WONDERS was offended and told him not to touch her and he laughed.

21.     On February 29, 2012, WONDERS complained again to MOURGIDES and BULYAR and related the incidents with SCHLAM as more specifically referenced in paragraphs 19 and 20 above.

22.     Rather than disciplining SCHLAM and putting a stop to his sexually harassing conduct, MOURGIDES and BULYAR'S panacea was to move WONDERS from the West Palm Beach office to their Jupiter office.  Such a move would have placed a tremendous financial burden on WONDERS making it impossible for her to continue working at UNITED TAX. Moreover, WONDERS questioned why she would have to be moved, when she was not the one committing the sexually harassing conduct.

23. On March 8, 2012, COOPER, WONDERS' direct supervisor, showed his co-workers a picture of his step-daughter. The lewd and sexually graphic comments from two co-workers followed:

 (a) SCHLAM said, "I want to see a picture of her fucking tits!"

 (b) OZZIE GOMEZ ("GOMEZ") stated, "Tony take your hand out of your pants. He's at about half mast now."

24. In this same incident, COOPER then showed his co-workers pictures of his wife at sixteen years of age. GOMEZ commented, "The floors will be sticky when I walk out of the bathroom."

25. On March 16, 2012, SCHLAM again entered the office loudly discussing his sexual conquests from the night before. WONDERS put on her headphones because she felt so uncomfortable with SCHLAM'S offensive ongoing daily routine of harassment.

26. That same day SCHLAM invited WONDERS to lunch, which she quickly declined.

27. Over two hours later, SCHLAM and GOMEZ came back from lunch very drunk. SCHLAM ripped his shirt off and declared it was "working in skins day". WONDERS put her hands over her eyes and asked SCHLAM to stop, but he just continued to act inappropriately with the full knowledge of management that he was constantly conducting himself in this offensive manner.

28. GOMEZ repeatedly flirted with WONDERS and asked her to go out with him, wherein she repeatedly declined.

29. At about 3:00 p.m. SCHLAM announced that he was going to, "sign up a fucking kook and a towelhead in the same day." He further stated, "You're good in here, but I'm good

on the streets with the freaks, and what I mean by that is between the sheets…My dick is hard right now, want to feel it Bob."

30. On March 30, 2012, SCHLAM and GOMEZ had another two hour lunch and again came back to the office very drunk. The typical erotic and offensive dancing commenced. SCHLAM simulated sexual intercourse on another co-worker, BOB BRUSH and declared that he was going to take his pants off. WONDERS' male co-workers were laughing as WONDERS stood there in disbelief.

31. COOPER, who was present during the March 30, 2012 incident, asked WONDERS what she had to say and she told him she would sue if SCHLAM removed his pants. When WONDERS threatened to sue for sexual harassment, they stared at her and laughed.

32. On April 12, 2012, WONDERS' manager, MOURGIDES sent an email to WONDERS and her co-workers with a graphic photo of a Hooters waitress suggesting that if his team closed more deals he would take them to Hooters. It read, "30 deals =". Under the = sign were two pictures – one was of a Hooters' waitress holding chicken wings and beer and the other was of just the breasts (in low cut tee shirts) of three Hooters waitresses holding a platter of chicken wings under their breasts.

33. At this point in time, both frustrated and exhausted of raising the issue with management, WONDERS hung up a poster about sexual harassment next to the OSHA posters in the office.

34. COOPER read aloud the section on the sexual harassment poster that listed what constitutes sexual harassment. COOPER and WONDERS' co-workers laughed at COOPER making fun of the sexual harassment poster. WONDERS was offended by their cavalier attitude of the law.

35. On May 11, 2012, SCHLAM brought his iPad into the office. He and COOPER in WONDERS presence viewed some of SCHLAM'S porn sites and had a lengthy discussion about them. SCHLAM made several comments about his co-workers putting their dicks in his ass and that he would bend over and take it.

36. On May 18, 2012, the sales team played a mix of music that included, "I'm Fucking You Tonight", which they all sang along to, and a song titled, "I Want to Fuck You Like an Animal."

37. Next, SCHLAM ripped off his pants and strutted around the office in his peach colored briefs. When WONDERS implored him to put his pants back on, SCHLAM replied "put that in your lawsuit." A chorus from GOMEZ, TOM PATTI and others of "yeah, put that in your lawsuit" ensued.

38. On prior occasions when WONDERS complained to BULYAR about these vulgar, degrading and sexually inappropriate music in the workplace, BULYAR allowed the music to continue and told WONDERS that it was good for morale and created a "fun sales environment".

39. WONDERS sought to complain about the May 18, 2012 incident because WONDERS was so upset and offended that her entire body was shaking. She typed a quick Skype to MOURGIDES, packed her phone and walked outside.

40. She then called BULYAR to report the incident and met with him at a nearby Starbucks. BULYAR concurred WONDERS work environment was "hostile," but described the vulgar and degrading actions of her co-workers as only "borderline harassment."

41. To make matters worse, yet again BULYAR's remedy was for WONDERS to move to the West Palm Beach office. As before, such a move would have placed a tremendous

7

financial burden on WONDERS making it impossible for her to continue working at UNITED TAX.

42. Accordingly, on May 21, 2012, still shaken and distraught about working in the conditions that she was being subjected to, WONDERS was compelled to resign her employment and was constructively discharged from her employment at UNITED TAX accordingly she sent emails to MOURGIDES and BULYAR informing them that she would not be returning to the office. Essentially, no reasonable person would have been expected to continue working at UNITED TAX under the circumstances that WONDERS was being subjected to on a daily basis.

43. WONDERS complained to management about the sexually explicit comments and conduct of various employees that she had endured on a daily basis, but MOURGIDES and BULYAR did absolutely nothing to stop the inappropriate conduct.

44. Each time WONDERS complained, Defendant through its management team would not do anything to resolve the complaints and rectify the sexual harassment in the workplace. In fact, each time WONDERS complaint, the employees' conduct would become worse, as a form of retaliation for WONDERS making said complaints.

45. There were no legitimate, non-discriminatory and/or non-retaliatory reasons for the discriminatory action taken against WONDERS by UNITED TAX.

46. The negative impact of the discriminatory and retaliatory action taken by UNITED TAX against WONDERS has resulted in subsequent difficulty for Plaintiff with both her mental and physical health and financial well-being.

47. Plaintiff has retained the undersigned counsel to represent her in this matter and is required to pay her counsel her reasonable attorneys' fees and costs associated with her representation.

8

## **COUNT I – WONDERS' TITLE VII SEXUAL HARASSMENT CLAIM**

48.    Plaintiff re-alleges and incorporates by reference as if fully set forth, the allegations in paragraphs 1 through 47.

49.    The acts more particularly alleged in paragraphs 1 through 42, constitute hostile-environment sexual harassment as proscribed by Title VII.

50.    The hostile work environment to which WONDERS was subjected to is based upon her being female. Defendant's employees and managers did not engage in similar sex harassing conduct towards male employees.

51.    The conduct of Defendant UNITED TAX deprived WONDERS of her statutory rights under Title VII, i.e., WONDERS, suffered discrimination with respect to the "terms, conditions, or privileges of employment," because of her sex.

52.    The conduct was offensive, unwelcome and pervasive, and because of it, WONDERS' work place became hostile. Defendant and its managers took no meaningful corrective action to stop the sexual harassment after Plaintiff complained about it. WONDERS was constructively discharged because no reasonable person would have continued to work under such unbearable and intolerable working conditions.

53.    As a direct, natural, proximate and foreseeable result of the actions and inactions of Defendant UNITED TAX, and its managers, Plaintiff WONDERS has suffered past and future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

54.    The actions of Defendant UNITED TAX were so malicious and in such reckless indifference to the state protected rights of WONDERS as to entitle her to receive an award of punitive damages to punish Defendant UNITED TAX and to deter them, and others, from such

DEUTSCH ROTBART & ASSOCIATES, P.A.
BOCA RATON • FORT LAUDERDALE • MIAMI

conduct in the future.

WHEREFORE, Plaintiff SARAH WONDERS prays that this court will:

A. Issue a declaratory judgment that Defendant UNITED TAX practices toward Plaintiff WONDERS are violative of her rights under Title VII.

B. Enjoin Defendant WONDERS, by and through its agents and employees, from continuing or maintaining the policy, practice, or custom of denying, abridging, withholding, or conditioning the rights of employees on the basis of their sex, rights against which behavior are secured by Title VII.

C. Enter a judgment for Plaintiff WONDERS and against Defendant UNITED TAX for damages, including compensatory and punitive damages

D. Grant WONDERS her costs and a reasonable award of attorney's fees pursuant to Title VII.

## COUNT II – WONDERS' TITLE VII RETALIATION CLAIM

55. Plaintiff re-alleges and incorporates by reference as if fully set forth, the allegations in paragraphs 1 through 47.

56. On several occasions, WONDERS specifically complained to Defendant's management about the hostile work environment that she was subjected to, but they took no meaningful corrective action to stop the sexual harassment. WONDERS had to resign from her employment because no relief was forthcoming and no reasonable person in her shoes would continue to work under such unbearable and intolerable conditions. Defendant's act of constructively discharging WONDERS constitutes retaliation as proscribed by Title VII.

57. WONDERS also suffered adverse treatment after she complained and opposed an employment practice made illegal by Title VII. Defendant UNITED TAX and its managers did

not engage in similar conduct toward employees who did not oppose employment practices made illegal by Title VII.

58. The conduct of Defendant UNITED TAX deprived WONDERS of her statutory rights under Title VII, i.e., WONDERS suffered discrimination with respect to the "terms, conditions, or privileges of employment," because of her opposition to an employment practice made illegal by Title VII.

59. As a direct, natural, proximate and foreseeable result of the actions of Defendant UNITED TAX, Plaintiff WONDERS has suffered past and future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

60. The actions of Defendant UNITED TAX were so malicious and in such reckless indifference to the state protected rights of WONDERS as to entitle her to receive an award of punitive damages to punish Defendant UNITED TAX and to deter them, and others, from such conduct in the future.

WHEREFORE, Plaintiff SARAH WONDERS prays that this court will:

A. Issue a declaratory judgment that Defendant UNITED TAX's practices toward her are violative of her rights under Title VII.

B. Enjoin Defendant UNITED TAX, by and through its agents and employees, from continuing or maintaining the policy, practice, or custom of denying, abridging, withholding, or conditioning the rights of employees on the basis of their opposition to an employment practice made illegal by Title VII as such rights against which behavior are secured by Title VII.

C. Enter a judgment for Plaintiff WONDERS and against Defendant

UNITED TAX for damages, including for compensatory and punitive damages.

   D.  Grant WONDERS her costs and a reasonable award of attorney's fees pursuant to Title VII.

## COUNT III – WONDERS' FLA. STAT. §760 SEXUAL HARASSMENT CLAIM

61. Plaintiff re-alleges and incorporates by reference as if fully set forth herein, the allegations in paragraphs 1 through 47.

62. Defendant's acts as more particularly alleged above, constitute hostile-environment sexual harassment as proscribed by the Florida Civil Rights Act of 1992, §760.10, Fla. Stat.

63. The hostile work environment to which Plaintiff was subjected to is based upon her being female. Defendant did not engage in sexually harassing conduct towards male employees.

64. Defendant's conduct deprived Plaintiff of her statutory rights under §760.10, Florida Statutes, i.e., WONDERS, by being subjected to the adverse treatment more particularly alleged above, suffered discrimination with respect to the "terms, conditions, or privileges of employment," because of her gender.

65. The conduct was offensive, unwelcome and pervasive, and because of it, WONDERS' work place became hostile. Defendant and its managers took no meaningful corrective action to stop the sexual harassment after Plaintiff complained about it. WONDERS was constructively discharged because no reasonable person would have continued to work under such unbearable and intolerable working conditions.

66. As a direct, natural, proximate and foreseeable result of Defendant's actions, Plaintiff has suffered past and future pecuniary losses, emotional pain, suffering, inconvenience,

mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

67. Defendant's acts were with malice and reckless disregard for WONDERS' right under the FCRA.

WHEREFORE, Plaintiff SARAH WONDERS prays for a judgment:

A. Preliminarily and permanently enjoining and restraining Defendant from engaging in acts of discrimination against Plaintiff;

B. Awarding Plaintiff any and all damages available to her including her back pay, front pay, prejudgment interest, and damages for all employment benefits she would have received but for Defendant's discriminatory acts and practices;

C. Awarding Plaintiff compensatory damages against Defendant;

D. Awarding Plaintiff punitive damages against Defendant, and

E. Awarding reasonable attorney's fees and costs incurred in this action as provided in Section 760.11(5), Florida Statutes; and

F. Ordering such additional equitable relief as is proper and just, including, but not limited to, the discipline and discharge of any of Defendant's employees found to have violated the Florida Civil Rights Act of 1992 by discriminating against Plaintiff.

## COUNT IV -   WONDERS' FLA. STAT.  §760  RETALIATION CLAIM

68. Plaintiff re-alleges and incorporates by reference as if fully set forth, the allegations in paragraphs 1 through 47.

69. On several occasions, WONDERS specifically complained to Defendant's management about the hostile work environment that she was subjected to but they took no meaningful corrective action to stop the sexual harassment.  WONDERS had to resign from her employment because no relief was forthcoming and no reasonable person in her shoes would

continue to work under such unbearable and intolerable conditions. Defendant's act of constructively discharging WONDERS constitutes retaliation as proscribed by Title VII. The adverse treatment to which Plaintiff was subjected was based upon her opposition to an employment practice made illegal by the Florida Civil Rights Act of 1992: Defendant did not engage in similar conduct toward employees who did not oppose employment practices made illegal by the Florida Civil Rights Act of 1992.

70. The conduct of Defendant deprived Plaintiff of her statutory rights under §760.10, Fla. Stat., i.e., Plaintiff, by being subjected to the adverse treatment more particularly alleged above, suffered discrimination with respect to the "terms, conditions, or privileges of employment," and was subjected to a hostile work environment because of her opposition to an employment practice made illegal by the Florida Civil Rights Act of 1992.

71. As a direct, natural, proximate and foreseeable result of the actions of Defendant, Plaintiff has suffered past and future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

72. The actions of Defendant were so malicious and in such reckless indifference to the state protected rights of Plaintiff as to entitle her to receive an award of punitive damages to punish Defendant, and to deter it, and others, from such conduct in the future.

WHEREFORE, Plaintiff SARAH WONDERS prays for a judgment:

A. Preliminarily and permanently enjoining and restraining Defendant from engaging in acts of retaliation against Plaintiff;

B. Awarding Plaintiff any and all damages available to her including her back pay, front pay, prejudgment interest, and damages for all employment benefits she would have received but for the discriminatory acts and practices of Defendant;

      C.      Awarding Plaintiff compensatory damages against Defendant;

      D.      Awarding Plaintiff punitive damages against Defendant, and

      E.      Awarding reasonable attorney's fees and costs incurred in this action as provided in Section 760.11(5), Florida Statutes; and

      F.      Ordering such additional equitable relief as is proper and just, including, but not limited to, the discipline and discharge, pursuant to Section 760.11(15), of any employees of Defendant found to have violated the Florida Civil Rights Act of 1992 by retaliating against Plaintiff.

### COUNT V - NEGLIGENT SUPERVISION AND TRAINING

73. Plaintiff re-alleges and incorporates by reference as if fully set forth, the allegations in paragraphs 1 through 47.

74. At all times material hereto, WONDERS, MOURGIDES, BULYAR, SCHLAM, GOMEZ, COOPER and BRUSH were employees of Defendant.

75. WONDERS was injured as a result of the wrongful, intentional and tortious conduct of MOURGIDES, BULYAR, SCHLAM, GOMEZ, COOPER and BRUSH.

76. In light of employer-employee relationship, Defendant owed a duty to WONDERS to exercise reasonable care in supervising and training its employees.

77. Specifically, Defendant had a duty to control, supervise and train its employees in order to prevent its employees from intentionally harming others.

78. Defendant knew or should have known it was necessary to control, supervise and train its employees in order to prevent its employees from intentionally harming others.

79. Defendant had the ability and opportunity to control, supervise and train its employees in order to prevent its employees from intentionally harming others.

DEUTSCH ROTBART & ASSOCIATES, P.A.
BOCA RATON • FORT LAUDERDALE • MIAMI

80. Defendant negligently breached its duty to supervise and train its employees by, inter alia:

    a. Failing to ensure that the workplace was free from tortious and illegal conduct;

    b. Failing to exercise proper supervision and control over subordinates and in allowing them to neglect their duties;

    c. Failing to hire qualified supervisory employees; failing to adequately train its employees on anti-sexual harassment policies;

    d. Failing to investigate allegations of employee misconduct, including but not limited to violations of company policies, manuals, codes of conduct; failing to enforce company policies, manuals and codes of conduct;

    e. Failing to take disciplinary or remedial action upon learning that its employees had engaged in conduct that was tortious, in violation of laws, rules or regulations, or in violation of company policies, manuals, or codes of conduct; and/or

    f. Failing to take remedial action when it was evident that one or more of its employees was unfit.

81. Defendant's breach of its duty to train and supervise employees was the proximate and actual cause of WONDERS' injuries.

82. WONDERS was in the foreseeable zone of risk of Defendant's negligent supervision and training of MOURGIDES, BULYAR, SCHLAM, GOMEZ, COOPER and BRUSH.

83. Defendant's negligence directly and proximately caused WONDERS to sustain severe, grievous and permanent injuries, mental pain and suffering, anguish, loss of earnings, and

other damages; said injuries are either permanent or continuing in nature and WONDERS will suffer such losses in the future.

WHEREFORE, Plaintiff SARAH WONDERS prays for a judgment:

A.   Awarding Plaintiff any and all damages available to her including her back pay, front pay, prejudgment interest, and damages for all employment benefits she would have received but for the discriminatory acts and practices of Defendant;

B.   Awarding Plaintiff compensatory damages against Defendant;

C.   Awarding Plaintiff punitive damages against Defendant, and

D.   Awarding reasonable attorney's fees and costs incurred in this action as pursuant to Title VII.

## COUNT VI - NEGLIGENT RETENTION

84.   Plaintiff re-alleges and incorporates by reference as if fully set forth, the allegations in paragraphs 1 through 47.

85.   At all times material hereto, WONDERS, MOURGIDES, BULYAR, SCHLAM, GOMEZ, COOPER and BRUSH were employees of Defendant.

86.   WONDERS was injured as a result of the wrongful, intentional and tortious conduct of MOURGIDES, BULYAR, SCHLAM, GOMEZ, COOPER and BRUSH.

87.   In light of the employer-employee relationship, Defendant had a duty to WONDERS to exercise reasonable care in the retention of its employees.

88.   Specifically, Defendant had a duty to take action such as discharge, investigate, discipline, or reassign employees that Defendant knew or should have known were unfit.

89.   During the course of employment, Defendant became aware, or should have become aware, of problems with MOURGIDES, BULYAR, SCHLAM, GOMEZ, COOPER and

BRUSH that indicated a lack of fitness.

90. It was unreasonable for Defendant not to take corrective action to remedy the unfitness of MOURGIDES, BULYAR, SCHLAM, GOMEZ, COOPER and BRUSH.

91. Defendant breached its duty by, inter alia, failing to take corrective action to remedy the unfitness of MOURGIDES, BULYAR, SCHLAM, GOMEZ, COOPER and BRUSH.

92. Defendant's breach of duty was the direct and proximate cause of injuries incurred by WONDERS.

93. WONDERS was in the foreseeable zone of risk of Defendant's negligent retention of MOURGIDES, BULYAR, SCHLAM, GOMEZ, COOPER and BRUSH.

94. Defendant's negligence directly and proximately caused WONDERS to sustain severe, grievous and permanent injuries, mental pain and suffering, anguish, loss of earnings, and other damages; said injuries are either permanent or continuing in nature and WONDERS will suffer such losses in the future.

WHEREFORE, Plaintiff SARAH WONDERS prays for a judgment:

A. Awarding Plaintiff any and all damages available to her including her back pay, front pay, prejudgment interest, and damages for all employment benefits she would have received but for the discriminatory acts and practices of Defendant;

B. Awarding Plaintiff compensatory damages against Defendant;

C. Awarding Plaintiff punitive damages against Defendant, and

D. Awarding reasonable attorney's fees and costs incurred in this action as pursuant to Title VII.

**COUNT VII – WONDERS' FLA. STAT. §448.101 WHISTLEBLOWER CLAIM**

95. Plaintiff re-alleges and incorporates by reference as if fully set forth, the

allegations in paragraphs 1 through 47.

96. This is an action for damages based upon violation of the Florida Private Whistleblower Protection Act, Fla. Stat. §448.101 et seq. ("WPA")

97. The WPA prohibits an employer from taking a retaliatory personnel action against an employee because the employee has objected to, or refused to participate in, any activity, policy or practice of the employer, which is in violation of any law, rule or regulation.

98. At all material times, Defendant was Plaintiff's employer as defined under the WPA.

99. Plaintiff engaged in statutorily protected conduct within the meaning of the WPA when she objected to sexual harassment in the workplace under Title VII and the FCRA.

100. Plaintiff's statutorily protected conduct under the WPA was a motivating cause compelling Plaintiff to resign her employment because no reasonable person would continue to work in such unbearable and intolerable conditions and such constructive discharge constitutes a material adverse action of Defendant.

101. As a result of Defendant's violation of the WPA, Plaintiff has been damaged.

102. Plaintiff is entitled to recover her attorneys' fees under §448.104, Florida Statutes.

WHEREFORE, prays for judgment against Defendant and for damages, including lost wages, lost benefits, compensatory damages, front pay or reinstatement, attorneys' fees, costs, and such other and further relief as the Court may find is just, necessary and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, SARAH WONDERS demands trial by jury for all issues so triable under federal and state law.

Respectfully submitted,

DEUTSCH ROTBART & ASSOCIATES, P.A.
4755 Technology Way
Suite 106
Boca Raton, Florida 33431
Telephone:  561.361.8010
Facsimile:   561.361.8086
Email:  edrotbart@dralawfirm.com

BY:  Erika Deutsch Rotbart s/.
      Erika Deutsch Rotbart, Esq.
      Florida Bar No.: 0047686