UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-80148-CIV-MIDDLEBROOKS/BRANNON

SARAH WONDERS,

    Plaintiff,

vs.

UNITED TAX GROUP, LLC, a Delaware
limited liability company,

    Defendant.

_____/

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

THIS CAUSE comes before the Court upon Defendant United Tax Group, LLC's ("Defendant") Motion for Summary Judgment (DE 26) ("Motion"), filed August 26, 2013. Plaintiff Sarah Wonders ("Plaintiff") filed a Response (DE 34) to the Motion on September 19, 2013. I have reviewed the Motion and the relevant filings, as well as the entire record in this case, and I am otherwise fully advised in the premises.

### I.    Background[1]

Plaintiff, a female, began working as an Enrollment Coordinator for Defendant, a financial services and tax resolution company, in October 2011. Plaintiff was the only female working in a room of twelve other Enrollment Specialists, one of them being her supervisor. (DE 1 at ¶ 16). Soon after her employment commenced, she was "subjected to continual and

---

[1] The facts herein are taken from Plaintiff's Complaint; Defendant's Motion for Summary Judgment; Defendant's Statement of Undisputed Facts (DE 28) and the documents in support thereof; Plaintiff's Response to Defendant's Motion for Summary Judgment; Plaintiff's Statement of Material Facts in Dispute (DE 36); and all other filings submitted for purposes of the instant Motion. All facts are construed in the light most favorable to Plaintiff.

1

repeated sexual harassment by her co-workers . . . ." (*Id.* at ¶ 13). The co-workers Plaintiff alleges engaged in the conduct at issue are Jordan Schlam, Bob Brush, Ozzie Gomez, and Tom Patti. Plaintiff quickly complained to her managers, Executive Vice President of Sales and Marketing Michael Mourgides ("Mourgides"), Executive Vice President of Operations Adam Bulyar ("Bulyar"), and her supervisor, Enrollment Manager Stewart Cooper ("Cooper"), but apparently no action was taken to stop the alleged harassment. (*Id.* at ¶ 14).

According to the Complaint, Plaintiff "was subjected to severe and pervasive sexual[] harassment every day . . . ." (*Id.* at ¶ 17). The Complaint lists several examples of her co-worker's alleged conduct: On January 20, 2012, Plaintiff saw what appeared to be semen in the unisex bathroom sink, something Plaintiff interpreted as directed toward her. On February 9, 2012, after having lunch with Plaintiff at an all-nude strip club, another co-worker openly spoke of his sexual experiences on the previous night, providing in graphic detail how he "rocked her all night," while simulating sexual intercourse motions in front of Plaintiff, and even going so far as offering to remove his pants. (*Id.* at ¶ 19). On February 27, 2012, this same co-worker put his hand on Plaintiff's shoulder and asked, "Do naughty girls need love too?" (*Id.* at ¶ 20).

When Plaintiff complained of this behavior to Mourgides and Bulyar, they offered to move her from the West Palm Beach office to their Jupiter office. This sort of relocation, according to Plaintiff, "would have placed a tremendous financial burden on [her,] making it impossible for her to continue working [for Defendant]." (*Id.* at ¶ 22).

The inappropriate behavior did not abate. On March 8, 2012, Plaintiff's co-workers openly made sexually explicit comments toward photographs of Cooper's daughter, as well as a photograph of Cooper's wife at sixteen years old. On March 16, 2012, a co-worker again entered the office loudly discussing his sexual experiences from the night before. That same

day, the same co-worker came back from lunch very drunk, took off his shirt, and declared it was "working in skins day." Plaintiff covered her eyes and asked the co-worker to stop, but he continued, and management did nothing to stop the behavior. Again on this day, the co-worker stated, "You're good in here, but I'm good on the streets with the freaks, and what I mean by that is between the sheets . . . My dick is hard right now, want to feel it Bob [another co-worker] [?]" (*Id.* at ¶ 29). On March 30, 2012, two co-workers came back from lunch, again very drunk, and began simulating sexual intercourse, one of them declaring that he was going to take his pants off. When Cooper asked Plaintiff "what she had to say," she threatened to sue for sexual harassment if the pants were removed. Her co-workers responded by staring at her and laughing. (*Id.* at ¶¶ 30, 31).

On April 12, 2012, Mourgides sent an email to Plaintiff and her co-workers with a "graphic photo of a Hooters waitress suggesting that if his team closed more deals he would take them to Hooters." At this point, Plaintiff hung up a poster about sexual harassment next to the OSHA posters in the office. (*Id.* at ¶ 33). Cooper and other co-workers laughed at Plaintiff's poster.

On May 18, 2012, the sales team played a mix of music containing sexually explicit lyrics. One co-worker "ripped off his pants and strutted around the office in his peach colored briefs. When [Plaintiff] implored him to put his pants back on, [the co-worker] replied 'put that in your lawsuit.'" (*Id.* at ¶¶ 36, 37).

Plaintiff again complained to Bulyar, but he allowed the behavior to continue, saying it was "good for morale and created a 'fun sales environment.'" (*Id.* at ¶ 38). The only remedy that was offered was to transfer Plaintiff to a different office location, which "would have placed a tremendous financial burden on [Plaintiff] making it impossible for her to continue working at

3

United Tax." (*Id.* at ¶ 41). Thus, on May 21, 2012, Plaintiff resigned from her employment, alleging that she was "constructively discharged."

Plaintiff filed her Complaint on February 11, 2013, alleging sexual harassment and retaliation by Defendant, her former employer. The Complaint sets forth seven Counts against Defendant: (1) Sexual harassment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") (Count I); (2) Retaliation in violation of Title VII (Count II); (3) Sexual harassment in violation of the Florida Civil Rights Act of 1992, Fla. Stat. § 760.10 (the "FCRA") (Count III); (4) Retaliation in violation of the FCRA (Count IV); (5) Negligent supervision and training (Count V); (6) Negligent retention (Count VI); and (7) Violation of the Florida Private Whistleblower Protection Act, Fla. Stat. § 448.101 *et seq.* ("FPWPA") (Count VII).

Defendant filed a Motion to Dismiss (DE 11) on March 27, 2013, making several arguments for dismissal of Plaintiff's Complaint. After considering the arguments made by both Parties, the Court granted in part and denied in part the Motion, and dismissed without prejudice Counts V (negligent supervision and training) and VI (negligent retention). (*See* DE 24). Since Plaintiff did not amend her Complaint within the time permitted by the Order, the only claims remaining are those for Title VII sexual harassment (Count I), Title VII retaliation (Count II), FCRA sexual harassment (Count III), FCRA retaliation (Count IV), and FPWPA (Count VII).

In the instant Motion, Defendant moves for summary judgment on all of Plaintiff's claims. First, Defendant argues that the conduct of which Plaintiff complains does not rise to the level of severity and pervasiveness required to sustain Title VII and FCRA sexual harassment claims. Second, Defendant argues that Plaintiff fails to meet the elements for either a Title VII or FCRA retaliation or Florida histleblower claim.

4

## II.  Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)(1)(A)). Where the non-moving party bears the burden of proof on an issue at trial, the movant may simply "[point] out to the district court that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

After the movant has met its burden under Rule 56(c), the burden shifts to the non-moving party to establish that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). Although all reasonable inferences are to be drawn in favor of the non-moving party, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), he "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. The non-moving party may not rest upon the mere allegations or denials of the adverse party's pleadings, but instead must come forward with "specific facts showing that there is a *genuine issue for trial*." *Id.* at 587 (citing Fed. R. Civ. P. 56(e)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). If the non-moving party fails to make a sufficient showing on an essential element of his

case on which he has the burden of proof, the moving party is entitled to a judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323.

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." *Id.* at 249-50.

### III. Analysis

#### A. Counts I & III: Hostile Work Environment Sexual Harassment

Plaintiff alleges that she was subjected to hostile work environment sexual harassment in violation of Title VII and the FCRA.[2] Title VII states that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to . . . compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). The Supreme Court has interpreted Title VII to extend to employers who require "people to work in a discriminatorily hostile or abusive environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).

To succeed at trial on a hostile work environment claim, an employee must demonstrate

> (1) that he or she belongs to a protected group; (2) that the employee has been subject to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; (3) that the harassment must have been based on the sex of the employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable.

---

[2] The FCRA was patterned after Title VII, and Florida courts have construed the Act in accordance with decisions of federal courts interpreting Title VII. *Wilbur v. Corr. Servs. Corp.*, 393 F.3d 1192, 1195 n.1 (11th Cir. 2004). This Court will therefore analyze the claims together.

6

*Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999). Defendant challenges the second, third, and fourth elements of the requirements set forth in Mendoza. The Court's analysis will not address the second element – whether the alleged harassment was "unwelcome" – as there remain genuine issues of material facts as to that element, and summary judgment therefore cannot be granted on that element. Moreover, the Court will address whether the harassment was based on Plaintiff's gender within the context of its severity and pervasiveness analysis.

### 1) Severity or Pervasiveness of Harassment

"Either severity *or* pervasiveness is sufficient to establish a violation of Title VII." *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 809 (11th Cir. 2010). In evaluating whether conduct is severe and pervasive enough to alter the terms and conditions of employment, the Eleventh Circuit has identified the following factors which should be considered: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Mendoza*, 195 F.3d at 1246.

Additionally, the environment must be subjectively and objectively hostile. *Id.* "The employee must 'subjectively perceive' the harassment as sufficiently severe and pervasive to alter the terms or conditions of employment, and this subjective perception must be objectively reasonable." *Id.* (quoting *Mendoza*, 195 F.3d at 1246. "[T]he objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'" *Id.* (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)).

7

However, not all allegedly derogatory or harassing behavior constitutes actionable sexual harassment. Before allegedly harassing statements or conduct can be considered in determining whether the severe or pervasive requirement is met, such statements and conduct must be shown to have been based upon Plaintiff's gender. *See Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 584 (11th Cir. 2000), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). "Title VII's test [] is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Reeves*, 594 F.3d at 809 (quotations omitted).

Thus, a claim of sexual harassment must be proven with evidence of harassment that is sexual or gender-based in nature. "[I]n order for conduct to rise to the level of sexual harassment, the conduct must include . . . conduct of a sexual nature, and innocuous statements or conduct, or boorish ones that do not relate to the sex of the actor or of the offended party (the plaintiff), are not counted." *Herron v. Morton*, 155 F. App'x 423, 426 (11th Cir. 2005) (internal quotations omitted). Moreover, the Supreme Court "[has] never held that workplace harassment, even harassment between men and women, is automatically discrimination because of sex merely because the words used have sexual content or connotations." *Oncale*, 523 U.S. at 80. Rather, the Court's Title VII determination rests on "whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 25 (1993) (Ginsburg, J., concurring)).[3]

---

[3] The *Oncale* Court cautioned courts and juries to "not mistake ordinary socializing in the workplace—such as male-on-male horseplay or intersexual flirtation—for discriminatory 'conditions of employment.'" *Id.* at 81.

8

The majority of the conduct at issue here is certainly of a sexual nature. A brief overview of the allegations that involve Plaintiff's gender or are of a sexual nature include: (1) one instance in which Plaintiff touched a substance in the unisex office bathroom that appeared to Plaintiff to be semen; (2) one instance in which a co-worker described in graphic detail his sexual activity with a woman, and he began simulating sexual intercourse motions in front of the entire office; (3) one instance after a lunch at a strip club, which Plaintiff voluntarily attended, in which a co-worker placed his hands on Plaintiff's shoulders and asked, "Do naughty girls need love too?"; (4) one instance between co-workers that involved a photograph of and sexually explicit comments about one worker's step-daughter and wife[4]; (5) one instance of a co-worker entering the office discussing his "sexual conquests" from the night before[5]; (6) one instance in which a co-worker invited Plaintiff to lunch[6]; (7) one instance in which two co-workers returned from lunch intoxicated and one removed his shirt, claiming it was "working in skins day"[7]; (8) one instance in which two workers again came back intoxicated from lunch and began dancing erotically and simulating sexual intercourse with each other, even offering to the entire office to take their pants off; (9) one instance in which an office manager sent an e-mail to the entire office with a photograph of a Hooters waitress, implying that if the team closed 30 deals, he (the manager) would take them to lunch at Hooters; (10) one instance in which co-workers discussed pornographic websites with regard to one of their iPads, but Plaintiff did not see any pornography, nor could she certify that any pornography was viewed in her presence; and (11)

---

[4] Plaintiff admitted at her deposition that she was not near this conversation, that it was not directed at her, and that she did not see the pictures being shown. (Pl. Depo at 121).
[5] Plaintiff admitted at her deposition that these comments were being directed at the entire sales team. (Pl. Depo at 123).
[6] This is not sexual in nature, but Plaintiff nevertheless appears to find it to be such.
[7] Instances 5, 6, and 7 occurred on the same day.

9

one incident in which co-workers began playing a mix of songs with sexual connotations, during which one co-worker removed his pants, exposing his underwear.

These allegations, combined with the numerous complaints she purportedly made to her managers, give rise to a genuine issue of material fact as to whether the behavior was sufficiently severe or pervasive so as to alter the terms and conditions of employment. Accordingly, with respect to Counts I and III, the Motion is due to be denied.[8]

    B.    *Counts II, IV, & VII: Retaliation and Whistleblower Claims*

In Counts II and IV of her Complaint, Plaintiff alleges violations of the FCRA and Title VII's retaliation protections. In Count VII, Plaintiff alleges violations of Florida Statutes § 448.101.[9] Under Title VII, an employer may not retaliate against an employee for opposing an unlawful practice or engaging in protected conduct, including complaining about gender discrimination. See 42 U.S.C. § 2000e-3(a).

In order to state a claim under Title VII, FCRA, or Florida's Whistleblower Act, Plaintiff must show: (1) she participated in a statutorily protected expression; (2) she suffered a materially adverse action; and (3) there was some causal connection between the two events. *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1277 (11th Cir. 2008) (citations omitted).

Defendant argues that there was no constructive termination or tangible employment action because Plaintiff's co-workers' conduct was not so severe or pervasive so as to alter her

---

[8] While these claims may proceed to trial, Plaintiff faces major factual hurdles at trial that may impose some difficulties for Plaintiff as seen in *Smart v. City of Miami Beach, Fla.*, 933 F. Supp. 2d 1366 (S.D. Fla. Mar. 26, 2013) (granting defendant's motion for judgment as a matter of law following a jury trial). Additionally, a reasonable jury may find that many of the acts complained of were not "unwelcome," given Plaintiff's own interactions and social history with her co-workers.

[9] As previously stated, claims under Title VII and the FCRA are analyzed under the same framework. Also, the law governing Title VII retaliation claims applies to similar charges under the Florida Whistleblower Act. *See Sierminski v. Transouth Fin. Corp.*, 216 F.3d 945, 950 (11th Cir. 2000); *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1389-90 (11th Cir. 1998).

work conditions. Having found that there is a genuine issue of material fact to be determined at trial as to this issue, I decline to consider this argument. Further, Defendant argues that Plaintiff's resignation does not meet the threshold for a constructive discharge because she was planning on finding another job anyway, as there is evidence that she needed a better-paying job.

Here, Plaintiff has presented evidence that she participated in a statutorily protected expression – that is, she complained to her managers about the daily harassment she allegedly experienced.

With regard to the second prong, Plaintiff claims that she was constructively discharged "because no relief was forthcoming and no reasonable person in her shoes would continue to work under such unbearable and intolerable conditions." (DE 1 at 10). In the context of a constructive discharge, the Eleventh Circuit has held that "a plaintiff must show that an employer imposed conditions that were so intolerable that a reasonable person would be compelled to resign." *Rutledge v. SunTrust Bank*, 262 F. App'x 956, 958-59 (11th Cir. 2008) (citing *Fitz v. Pugmire Lincoln-Mercury, Inc.*, 348 F.3d 974, 977-78 (11th Cir. 2003)). As a matter of law, I find that no reasonable juror could find that Plaintiff was constructively discharged. While the alleged harassment went unabated, the undisputed facts show that Plaintiff's managers offered her a simple solution: transfer from the West Palm Beach office to the nearby Jupiter office. Plaintiff had already been working in the Jupiter office one day per week, but argues that a full-time transfer to Jupiter was retaliatory because her job would be slightly more difficult being away from the rest of her work group, and driving to Jupiter would "eat up [her] paycheck . . . ." (Pl. Depo at 190). In order for Plaintiff's resignation to be a constructive discharge, the transfer to Jupiter must be so intolerable that a reasonable person would be compelled to resign. As a matter of law, I find that a transfer from the West Palm Beach office to Jupiter office cannot

serve as a constructive discharge. Thus, there is no genuine issue of material fact as to whether Plaintiff suffered a materially adverse employment action as a result of her protected expression.[10] As to Counts II, IV, and VII, the Motion is due to be granted.

C. *Punitive Damages*

Plaintiff seeks punitive damages against Defendant for her remaining claims for Title VII and FCRA hostile work environment sexual harassment. Defendant argues that Plaintiff has provided no proof to support a claim of punitive damages against Defendant as the employer for her Title VII sexual harassment claim.[11] Defendant also argues that there is no proof of any malice or willful or wanton conduct on the part of Defendant.

Under the 42 U.S.C. § 1981a, punitive damages are available where "the complaining party demonstrates" that the employer "engaged in . . . discriminatory practices with *malice* or with *reckless indifference* to the federally protected rights of an aggrieved individual." *Id.* (emphasis added). "Punitive damages will ordinarily not be assessed against employers with only constructive knowledge of the violations." *Dudley v. Wal-Mart Stores, Inc.*, 166 F.3d 1317, 1323 (11th Cir. 1999)) (internal quotation marks omitted). Rather, to receive punitive damages, a plaintiff "must show either that the discriminating employee was high up the corporate hierarchy, or that higher management countenanced or approved [the] behavior." *Id.* "In other words, the employer must be proved to be at fault." *Id.* Further, the Eleventh Circuit has cited examples of conduct that could support a punitive damages award: "(1) a pattern of discrimination, (2) spite or malevolence, or (3) a blatant disregard for civil obligations." *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1280 (11th Cir. 2008) (quotations omitted).

---

[10] Additionally, nor can it be said that the proposed transfer was "retaliatory." This was a solution offered by Defendant's management, and Plaintiff decided not to accept the offer.
[11] Defendant provides no argument with regard to punitive damages based on Plaintiff's state law claim.

12

In this case, Plaintiff has brought forth sufficient evidence that she complained of the conduct at issue to both Messrs. Bulyar and Mourgides. Mr. Bulyar was the Executive Vice President of Operations of Defendant, and Mr. Mourgides was the Executive Vice President of Sales and Marketing. (DE 36 at ¶ 1). Given the evidence presented, at the very least, there exists a genuine issue of material fact as to whether higher management acted with reckless indifference or blatant disregard to Plaintiff's rights. The Motion on this issue is therefore due to be denied.

## IV. Conclusion

For the foregoing reasons, it is hereby

**ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment (DE 26) is **GRANTED IN PART** and **DENIED IN PART** as follows:

1. To the extent the Motion seeks summary judgment on Counts I and III, the Motion is **DENIED**;

2. To the extent the Motion seeks summary judgment on Counts II, IV, and VII, the Motion is **GRANTED**;

3. To the extent the Motion seeks summary judgment on Plaintiff's Title VII punitive damages claim, the Motion is **DENIED**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida, this 29 day of October, 2013.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

Copies to: Counsel of Record